AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

13-8149-8LB

| United States of America | )  |
|---|---|
| v. | ) Case No. 13M-5013-J6D |
| JONATHAN JOSEPH DELEEUW, | ) |
| a/k/a "Jon," a/k/a "Johnny D" | ) |
|  | ) |
|  | ) |
| _____ | ) |
| *Defendant(s)* | |

MAR 1 1 2013

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   January 2009 through August 2010   in the county of   Norfolk, Suffolk, Plymouth   in the

_____   District of   Massachusetts   , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1) | Conspiracy to possess with intent to distribute and to distribute Oxycodone, a Schedule II controlled substance. |

This criminal complaint is based on these facts:

See attached Affidavit of DEA Special Agent Matthew Deignan.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Matthew Deignan, DEA
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   3/11/13

_____
*Judge's signature*

City and state:         Boston, MA

U.S. Magistrate Judge Judith G. Dein
_____
*Printed name and title*

## AFFIDAVIT OF SPECIAL AGENT MATTHEW DEIGNAN

I, Special Agent Matthew Deignan, being duly sworn, do hereby depose and state that:

1.      I am a Special Agent with the United States Drug Enforcement Administration ("DEA"). I have served in this capacity for over twenty-three years and am currently assigned to the Boston, Massachusetts Divisional Office. During my tenure as a Special Agent, I have worked on dozens of drug investigations. I have conducted surveillance of controlled purchases of narcotics by agents acting in an undercover capacity and confidential informants on numerous occasions. Acting in an undercover capacity, I have also participated in controlled purchases of narcotics. I have participated in over 20 Title III wiretap investigations. I have written and/or participated in the execution of numerous search warrants resulting in seizures, including large quantities of controlled substances, large amounts of United States currency, ledger books, bank records, telephone records, receipts, drug customer lists and other documents relating to the manufacturing, transportation, ordering, purchasing and distribution of controlled substances. I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations and to make arrests for federal felony offenses.

2.      I am submitting this affidavit in support of a criminal complaint charging that from a time unknown, but from no later than in or about January 2009, through in or about August 2010, at Quincy, Boston, Milton, Rockland, and elsewhere in the District of Massachusetts, and elsewhere, Jonathan Joseph DELEEUW, a/k/a "Jon," a/k/a "Johnny D" (hereinafter "DELEEUW"), did knowingly and intentionally combine, conspire, confederate, and agree, with persons known and unknown to possess with intent to distribute, and to distribute,

Oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

3.     The information contained in this affidavit is based on my personal involvement in this investigation, my training and experience, my review of documents, surveillance, and the observations and knowledge related to me by other DEA agents and law enforcement personnel who have been working on this investigation. This affidavit is submitted for the limited purpose of establishing probable cause to support the criminal complaint. Therefore, I have not included every fact known to me or other law enforcement officers concerning this investigation.

**Background**

4.     In June of 2009, a cooperating witness ("CW-1") told DEA agents that two individuals, Steven Kostenblatt ("Kostenblatt") and Jillian Reis ("Reis") were running an Oxycodone trafficking organization in and around the South Shore in Massachusetts, and catering to drug customers in the area.[1] Thereafter, CW-1 met several times with DEA agents and provided additional information concerning this Oxycodone trafficking organization.

5.     CW-1 told agents that Kostenblatt and Reis traveled to West Palm Beach, Florida, to receive thousands of 30 mg. Oxycodone pills. Once in Florida, Kostenblatt and Reis obtained Oxycodone in one of two manners: (a) by using couriers who obtained prescriptions for

---

[1] CW-1 initially approached the DEA and voluntarily provided information about Kostenblatt's and Reis's activities. Subsequently, CW-1 received compensation for information that s/he provided in this and other matters. CW-1 has a history of prior drug use, including during the time period in which s/he provided information concerning this investigation. CW-1 has never been convicted of any offenses. Between 1997 and 2000, CW-1 was charged with a variety of minor criminal offenses, all of which were either dismissed or continued without a finding. Several months after CW-1 stopped providing information to the DEA, s/he was charged with possession of a class A controlled substance in state court.

Oxycodone and then provided the drugs to Kostenblatt and Reis; or (b) by buying the drugs from two sources of supply known as "Big Mike" and "Jon," who were from the West Palm Beach area and sold Oxycodone pills to Kostenblatt and Reis. As will be discussed below, the evidence obtained during the investigation establishes that the individual identified by CW-1 as "Jon" is DELEEUW.

6.      CW-1 explained that Kostenblatt and Reis bought plane tickets and sent individuals from Massachusetts to West Palm Beach to obtain pills for distribution in Massachusetts. CW-1 stated that Kostenblatt directed the couriers to go to a specific MRI facility. CW-1 stated that Kostenblatt gave the couriers $250.00 in United States currency to pay for the MRI. CW-1 stated that once the MRI was completed, the couriers were then taken to a pain clinic. The couriers paid the clinic $250.00 in cash, which they received from Kostenblatt. In return, the couriers received a prescription for 180 Percocet 30mg pills. They filled the prescriptions and turned the pills over to Kostenblatt. Kostenblatt then sold 50 pills in a pack for prices ranging from $16.00 to $20.00 per pill.

7.      CW-1 stated that Kostenblatt also had various sources of supply in the West Palm Beach area.   During subsequent debriefings, CW-1 identified individuals in addition to "Big Mike" and "Jon" who provided Oxycodone to Kostenblatt and Reis. CW-1 stated that Kostenblatt paid individuals to go to West Palm Beach to pick up and transport back to Massachusetts quantities of Percocets. CW-1 identified by name one of Kostenblatt's couriers, Mark Devereaux ("Devereaux"). CW-1 stated that Kostenblatt gave Devereaux approximately 3,400 Percocet 30mg pills during the weekend of June 13, 2009, and that Kostenblatt received some of those pills from "Jon" (DELEEUW). CW-1 was told that Devereaux got involved in an

3

altercation in Washington, D.C., en route back to Massachusetts, and that law enforcement agents found a quantity of pills in Devereaux's bag and arrested Devereaux.

8.      I have verified much of the information provided by CW-1 and have found CW-1 to be credible and reliable. For example, I have determined that Mark Devereaux was arrested on June 13, 2009, in Washington, D.C., at the Amtrak Station, and was found in possession of 3,425 Oxycodone tablets in clear plastic bags that were hidden on Devereaux's body.[2] I have also reviewed documents indicating that CW-1, Kostenblatt, Reis, and Devereaux were in Palm Beach, Florida, on various dates between approximately June 10, 2009, and June 17, 2009. Additional corroboration will be discussed in this Affidavit.

### The Seizure of Two Packages in February 2010

9.      Information later provided by CW-1 also led to the search and seizure of two packages pursuant to federal search warrants (10-1641-TSH and 10-1642-TSH) on February 17, 2010. CW-1 advised that Kostenblatt had stated that Kostenblatt was sending money to one of his sources in Florida to cover a prior drug debt, as well as to purchase additional Oxycodone pills, which were already en-route by Next Day Air to Kostenblatt. The first seized package, which was to be shipped via UPS from a UPS shipping facility in Braintree, Massachusetts, identified by CW-1, listed the name and address of the intended recipient and bore a return address in the name of "Steve Kostenblatt, (978) 873-0829, 41 Winthrop Street, Quincy, MA 02170" (hereafter this package will be referred to as "Package #1"). Package #1 contained $90,875.00 in United States currency hidden inside two boxes: a brown cardboard "Net 10" cell

---

[2] Devereaux has since been charged, convicted, and sentenced to 28 months in prison for conspiring to distribute and possess with intent to distribute Oxycodone in violation of 21 U.S.C. § 846. United States v. Mark D. Devereaux, No. 09-cr-00176-ESH (D.D.C.).

4

phone box, and a red cardboard "U.S. Patrol wall clock with hidden safe" box.[3]  Subsequent

fingerprint analysis conducted by DEA Northeast Regional Laboratory identified Kostenblatt's

fingerprints on both of these boxes.

    10.    Consistent with the information provided by CW-1, UPS personnel on February

17, 2010, identified a second package en route from Florida to "41 Winthrop Avenue, Quincy,

Massachusetts," which was the address for the residence shared by Kostenblatt and Reis

(hereafter this package will be referred to as "Package #2").[4]  Pursuant to a federal search warrant

for Package #2, agents opened the outer Express pad pack.  Inside, agents found a UPS express

pack with "Steven Parker, 41 Winthrop Ave., Quincy, MA  02170" written on it in blue ink.

Inside this UPS express pack, agents found a cardboard UPS express envelope which contained a

black Blockbuster DVD case, which was wrapped in red construction paper with stickers on it.

Inside the DVD case was a plastic Ziploc bag with "580" written on the bag in ink.  Inside the

Ziploc bag were 580 blue pills, which laboratory analysis conducted by the DEA Northeast

Regional Laboratory confirmed contained Oxycodone Hydrochloride, a Schedule II controlled

substance.

    11.    The DEA Northeast Regional Laboratory also conducted fingerprint analysis on

Package #2 and its various contents.  That analysis revealed that DELEEUW's fingerprints

---

    [3] Inside the UPS package, agents also found a piece of cardboard with a shipping label
bearing the name "James Matthews."  Inside the package, the agents also found another box,
which was partially wrapped in brown tape and which had written in blue ink "Steve Parker, 377
Great Rd., Jaffrey, NH 03452."  Kostenblatt's fingerprints were also identified on this package.

    [4] According to the shipping label, this package was addressed to "Steve Parker, 41
Winthrop Ave., Quincy, Massachusetts 02170," and was purportedly sent from "James
Matthews, 561-482-4681, 1182 Barnett Dr., Lake Worth, FL 33461."

matched prints that were found on various items: one latent fingerprint on the UPS Express envelope; two latent fingerprints on the UPS Express bubble pack that was packed inside the outer UPS Express pack; and five latent fingerprints on the black DVD case that contained the 580 Oxycodone pills.

12.     CW-1 stated that in late February 2010, after the seizure of the cash in Package #1, Kostenblatt traveled to Florida to meet with his Florida sources of Oxycodone supply to discuss the fact that $90,000 had disappeared.

13.     A second individual, CW-2, confirmed that Kostenblatt traveled to Florida in late February 2010 to meet with Kostenblatt's Florida sources of Oxycodone after a box with $90,000 that had been shipped by Kostenblatt earlier in the month disappeared.[5] CW-2 explained that s/he was a major Oxycodone customer of Kostenblatt's and estimated that s/he had purchased anywhere from 70,000 to 80,000 Oxycodone pills from Kostenblatt. CW-2 stated that Kostenblatt advised her/him that Kostenblatt had a group of friends down in Florida who supplied Kostenblatt with Oxycodone pills. Kostenblatt indicated to CW-2 that there were four individuals who were primarily involved, one of whom was "Johnny D," who I believe is DELEEUW. According to what Kostenblatt told CW-2, "Johnny D" contributed a portion of the pills and was responsible for the shipping operation in Florida; a second individual (whom CW-2 identified by name) was primarily responsible for collecting and distributing money and also

---

[5] At the time s/he provided this information, CW-2 was facing state drug distribution charges in New Hampshire, as well as well as state drug trafficking and distribution charges in Massachusetts. CW-2 has admitted that s/he previously sold a variety of controlled substances, including marijuana, LSD, ecstasy, Oxycodone 30 mg. tablets, Oxycontin 80 mg. tablets, and that s/he had used all of those drugs, and others, including heroin, suboxone, DMT, and "K." CW-2 cooperated with the ongoing investigation in the hope of receiving favorable consideration at sentencing with respect to her/his pending state charges.

contributed a portion of the pills; and two other individuals, "Big Mike," and "Little Mike," were the primary sources of Oxycodone supply.

14.     CW-2 stated that, after Package #1 disappeared, Kostenblatt blamed "Johnny D" for the loss of the package because "Johnny D" worked for UPS.  CW-2 explained s/he and Kostenblatt went to Florida to resolve with Kostenblatt's Florida Oxycodone suppliers how they were going to cover the loss of $90,000 from Package #1.  CW-2 explained that s/he went with Kostenblatt because s/he was a big customer of Kostenblatt's.  CW-2 stated that s/he and Kostenblatt first met with "Johnny D" in Florida to discuss the situation, and that s/he and Kostenblatt received Oxycodone pills from "Johnny D."  CW-2 stated that s/he and Kostenblatt then met separately with three other individuals ("Big Mike," "Little Mike," and a third individual whom CW-2 identified).[6]

## July 2010 -- Seizure of Two Packages Containing Cash That Were Addressed to DELEEUW

15.     On July 1, 2010, a package addressed to Jon DELEEUW, 3656 Hudson Lane Boynton Beach, FL, was intercepted at the UPS distribution center in Riviera Beach, Florida (hereafter the "July 1, 2010 Package").  The July 1, 2010 Package was shipped from the UPS Store 550 Adams St. Quincy, MA  02169, and was purportedly shipped by "Sheldon Hoover." After a state search warrant was obtained for the July 1, 2010 Package, agents opened the package, which contained $5,400 in U.S. Currency inside a Cookie Monster toy along with a handwritten note that read "enjoy and I will see you soon."

---

[6] These three individuals were also identified by CW-1 as Kostenblatt's sources of supply in Florida.

7

16.     On July 8, 2010, UPS security personnel intercepted another package addressed to Jon DELEEUW, 3656 Hudson Lane, Boynton Beach, Florida (hereafter the "July 8, 2010 Package"). The July 8, 2010 Package was purportedly shipped by "Sheldon Hoover" with a return address: UPS Store, 759 Chief Justice Cushing Highway, Cohasset, MA 02025. When agents arrived at the UPS facility, they found that the July 8, 2010 Package had been opened by UPS personnel prior to the arrival of law enforcement personnel and without their knowledge or instruction. The July 8, 2010 Package contained birthday wrapping paper, which contained a white t-shirt. The t-shirt contained a blue and black camera bag, which contained U.S. currency. A UPS employee advised the agents that he had counted the money and advised there was approximately $15,900.00. The July 8, 2010 Package and currency were secured by law enforcement agents, who then transported them to the Palm Beach County Sheriff's Department. There, the currency was counted with an unofficial count of $16,000.00. UPS personnel informed law enforcement that an individual claiming to be DELEEUW contacted UPS several times looking for a package that was supposed to be delivered to his residence at 3656 Hudson Lane, Boynton Beach, Florida.

17.     On July 8, 2010, DEA agents went to 3656 Hudson Lane and spoke with DELEEUW. The agents informed DELEEUW that the package had been intercepted. The agents asked DELEEUW what the package contained. DELEEUW stated that the package was to contain jewelry and approximately $15,000 in cash. DELEEUW stated that the money was sent by Reis. DELEEUW stated that the money was in return for some money and jewelry that he had previously lent to Reis for gambling at Foxwoods.

8

18.     During the interview, agents asked DELEEUW if he knew about diverted narcotics being shipped to northern states in return for money. DELEEUW stated that he had been approached by another individual (hereafter "Target Subject-1") whom he identified.[7] DELEEUW stated that Target Subject-1 asked him to ship diverted pills "up north." DELEEUW said that Target Subject-1 knew that DELEEUW worked at UPS and felt that DELEEUW could easily ship the pills for Target Subject-1. DELEEUW stated that he refused to help and had no involvement in the shipping of diverted pills. DELEEUW also said that Target Subject-1 had a female contact who, either worked in a pharmacy or had some connections to a pharmacy, and who was able to supply Target Subject-1 with thousands of pills. DELEEUW indicated that Target Subject-1 was working with various other individuals, including Kostenblatt.

19.     In August 2010, I and other law enforcement agents approached CW-3, who admitted her/his involvement in Oxycodone trafficking.[8] Thereafter, CW-3 met with law enforcement agents on several occasions. Among other things, CW-3 confirmed that s/he and Kostenblatt received Oxycodone from various individuals in Florida. CW-3 identified several of those individuals, including DELEEUW, Target Subject-1, and the other individuals identified

---

[7] From information from various sources obtained during the course of the investigation, I believe that Target Subject-1 is the same person identified as "Big Mike" by CW-1 and CW-2. Package #1, which was discussed in paragraph 9 and which contained $90,875, was addressed to Target Subject-1.

[8] CW-3 admitted to participating in the illegal distribution of Oxycodone and has entered into a cooperation plea agreement with the United States Attorney's Office for the District of Massachusetts. CW-3 has a history of substance abuse, including during the time period in which s/he provided information to me. CW-3 has a criminal record, including convictions for distribution of oxycontin and larceny. CW-3 committed new criminal activity, including additional distribution of Oxycodone, after s/he began providing information concerning her/his activities and the activities of others, including DELEEUW.

by CW-1 and CW-2.  CW-3 stated that DELEEUW went by the nickname "Johnny D" and that

Target Subject-1 went by the nickname "Big Mike."  CW-3 further admitted that s/he and

Kostenblatt sold the Oxycodone that they received from their Florida sources to customers in

Massachusetts, and that Kostenblatt also sold Oxycodone to customers in New Hampshire.  CW-

3 indicated that s/he and Kostenblatt had been receiving Oxycodone from Florida and selling the

pills in Massachusetts since approximately early in 2009.

20.	CW-3 admitted that s/he sent both the July 1, 2010 Package and the July 8, 2010

Package to DELEEUW.  Although CW-3 first suggested that the cash in one of the packages was

repayment from a loan from DELEEUW, CW-3 ultimately admitted that the cash in both

packages was for payment of Oxycodone pills that were being supplied to her/him by

DELEEUW.  CW-3 stated that shortly after the July 8, 2010 Package was seized, DELEEUW

called CW-3 and informed CW-3 that law enforcement had questioned him about the package.

DELEEUW asked CW-3 to speak with his lawyer and falsely state that the money was from

gambling.

21.	CW-3 reviewed numerous UPS airbills reflecting shipments between April 20,

2010, and June 30, 2010, that were addressed to DELEEUW at 3656 Hudson Lane, Boynton

Beach, Florida.  CW-3 explained that these airbills reflected shipments that s/he had made to

DELEEUW, and that the packages contained cash for Oxycodone pills that DELEEUW had

either sent or was going to send to CW-3.

22.	I have obtained several airbills reflecting shipments over this same approximate

time period (May 2010 through July 2010) that were made from a UPS Staffed Location, 2001

Avenue P, Riviera Beach, Florida, and that were addressed to CW-3 using either CW-3's first and

10

last names or CW-3's middle and last names.  CW-3 stated that these packages contained
Oxycodone pills that were sent to CW-3 by DELEEUW.

23.     On September 26, 2011, I and other DEA agents approached Kostenblatt as he
was leaving a restaurant in Keene, New Hampshire.  After identifying ourselves, we asked to
speak with Kostenblatt.  I advised Kostenblatt of his Miranda rights, and Kostenblatt executed a
written waiver of those rights.  I further advised Kostenblatt that he was not under arrest.

24.     Kostenblatt agreed to speak with myself and the other agents.  Among other
things, Kostenblatt admitted that he had obtained Oxycodone pills from a variety of sources,
including Target Subject-1 and DELEEUW, and that he was selling the pills.  Kostenblatt
admitted that he sent Package #1, which contained over $90,000 in U.S. currency.  Kostenblatt
stated that approximately $38,000 was sent to pay for more Oxycodone pills.  Kostenblatt told
agents that he believed that DELEEUW stole the package.  Kostenblatt explained that
DELEEUW worked for UPS and was responsible for shipping the pills that Target Subject-1 and
others were sending to Kostenblatt.  Kostenblatt stated that because DELEEUW worked for UPS,
Kostenblatt figured that DELEEUW had access to the package and stole the money.  As a result,
Kostenblatt explained, he had DELEEUW advance him $32,000 worth of Oxycodone pills a
short time after the money went missing and then never paid DELEEUW for the pills.[9]

25.     As discussed in paragraph 14 above, CW-2 separately confirmed that Kostenblatt
received a quantity of pills from DELEEUW shortly after the $90,000 package sent by
Kostenblatt disappeared.  Additionally, according to CW-3, DELEEUW complained to CW-3

---

[9] Kostenblatt is currently facing federal Oxycodone distribution charges in the District of
Massachusetts.

11

that Kostenblatt had falsely accused DELEEUW of stealing the $90,000 package.  DELEEUW

noted to CW-3 that if he (DELEEUW) had stolen the package, then there would have been no

reason for him (DELEEUW) to provide additional pills to Kostenblatt.

**Conclusion**

26.     Based upon the foregoing, and based upon my training and experience, I submit that there is probable cause to believe that from a time unknown, but from no later than in or about January 2009, through in or about August 2010, at Quincy, Boston, Milton, Rockland, and elsewhere in the District of Massachusetts, and elsewhere, Jonathan Joseph DELEEUW, a/k/a "Jon," a/k/a "Johnny D" did knowingly and intentionally combine, conspire, confederate, and agree, with persons known and unknown to possess with intent to distribute, and to distribute, Oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

MATTHEW DEIGNAN
Special Agent
U.S. Drug Enforcement Administration

Subscribed and sworn to before me, this ___11th___ day of March 2013.

HON. JUDITH G. DEIN
United States Magistrate Judge

13

AO 442   (Rev. 10/03) Warrant for Arrest

# UNITED STATES DISTRICT COURT

District of   Massachusetts

UNITED STATES OF AMERICA

v.

JONATHAN JOSEPH DELEEUW,
a/k/a "Jon," a/k/a "Johnny D"

### WARRANT FOR ARREST

Case Number: 13H-5013-JGD

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest _____ JONATHAN JOSEPH DELEEUW _____

Name

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

☐ Indictment   ☐ Information   ☒ Complaint   ☐ Order of court   ☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice

charging him or her with   (brief description of offense)

Conspiracy to possess with intent to distribute and to distribute Oxycodone, a Schedule II controlled substance

in violation of Title  21  United States Code, Section(s) 846; 841(a)(1)

Hon. Judith G. Dein
Name of Issuing Officer

Signature of Issuing Officer

U.S. Magistrate Judge
Title of Issuing Officer

3/11/13   Boston, MA
Date and Location

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |